# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ABBY KNAUP,

      Plaintiff,

    v.

MOLINA HEALTHCARE OF OHIO, INC.,

      Defendant.

Case No. 2:19-cv-166

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsea Vascura

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 20)

Plaintiff Abby Knaup, a former employee of Defendant Molina Healthcare of Ohio, Inc., claims that Molina violated the Family and Medical Leave Act by interfering with her entitlement to take leave under the Act and then engaging in retaliatory termination.  Knaup suffered from anxiety and depression in 2018, leading her to apply for leave under the Act.  Molina denied her application through its third-party administrative contractor that processed leave requests, The Hartford, asserting that she had failed to submit a timely medical certification supporting her request for leave.  When Knaup did not return to work after the denial of her leave requests, she was terminated.  At the heart of this case is a dispute about whether Knaup received an extension of the deadline for submitting her medical certification after calling Hartford's customer service to seek clarification of a letter regarding her application—a letter, like the majority of Hartford's and Molina's letters to Knaup, that was anything but clear.  For the reasons that follow, Knaup demonstrates triable issues of fact for her interference claim but not her retaliation claim.

## I.    Background

In April 2017, Knaup began to work for Molina as a Care Review Processor.  (ECF No. 19-1 at PageID #77, 81.)  Knaup supported nurses by helping patients obtain their prescriptions and other medical supplies, for example, canes or blood pressure cuffs, during the first thirty days of a patient's discharge from a hospital.  (*Id.* at PageID #81, 85.)  The object of Knaup's job was to help prevent rehospitalizations of patients.  (*Id.*)

Knaup testified that during her tenure at Molina, she endured grossly unprofessional bullying and harassment.  Three of her peers regularly bullied her, primarily by falsely reporting to human resources that she was having a sexual relationship with her supervisor.  (*Id.* at PageID #97–99.)  As a result, Knaup was required to meet with human resources three times.  (*Id.*)  During the summer of 2018, Knaup reported this harassment multiple times to two supervisors, including the supervisor with whom she was accused of having a relationship.  (*Id.* at PageID #99–101.)  Only this supervisor responded, stating that he would put Knaup and the three employees harassing her in a room so that they could "duke it out."  (*Id.* at PageID #103.)  Due to this situation, Knaup would become nauseous and vomit if she had to go to work.  (*Id.* at PageID #98.)

Consequently, Knaup applied for leave under the Family and Medical Leave Act ("FMLA") as well as under Molina's short-term disability policy, for anxiety and depression.  A series of communications to Knaup from Molina and Hartford, Molina's third-party administrative contractor, ensued.

### A.  October 11, 2018 Letter from Hartford

On October 10, 2018, Knaup filed an application for leave under the FMLA and Molina's short-term disability policy, and the next day Hartford replied via letter.  (ECF No. 20-2 at PageID #579.)  The letter noted that Hartford had reviewed her application and determined her eligibility

2

status for the types of leave she requested. For leave under the FMLA from October 10, 2018 to January 1, 2019, the letter noted that she was "[e]ligible," meaning she "met the requisite criteria to be considered for leave." The letter also noted that for FMLA leave after January 1, 2019, she was eligible but would be unable to take the time because she would "have already exhausted [her] available leave time under the FMLA." And for leave under Molina's short-term disability policy from October 10, 2018 to January 2, 2019, the letter stated that her eligibility status was "[p]ending [d]etermination," meaning that "a decision has not yet been made regarding your request." (*Id.*) Whether this referred to her eligibility to take leave or the actual request for leave itself is ambiguous because Knaup's eligibility status was not a request, though her application for leave obviously was.

After the summary of her apparent eligibility statuses for each type of leave, the letter continued. First, it directed her to keep in touch with Molina and Hartford about her leave. (*Id.*) Second, it stated, "[o]nce we obtain the necessary information from your health care provider to support your leave request, due by 10/26/2018, **we will make a determination to approve or deny your request for Short Term Disability (STD) benefits.**" (*Id.* (emphasis in original).) The letter did not mention that Knaup's FMLA leave request required this documentation, nor did the letter otherwise indicate that any next steps applied to the FMLA leave request.

### B. October 28, 2018 Letter from Hartford

Hartford then sent Knaup a letter on October 28, 2018. (*Id.* at PageID #582.) The letter stated that Harford had "not received your Treating Provider's information. This information was requested on October 11, 2018. As it is required, we are unable to completely evaluate your claim for benefits and have closed your file." The October 28 letter stated that Knaup could submit the information within 60 days for evaluation or she could appeal the denial. (*Id.*) A separately

3

enclosed letter noted that her FMLA and short-term disability applications were denied because "paperwork has not been returned." (*Id.* at PageID #584.)

It is unclear whether Hartford sought a medical certification or merely Knaup's doctor's contact information. The October 11 letter referred to information that it would receive from Knaup's doctor and the enclosed letter from October 28 referred to paperwork, suggesting Hartford required a medical certification. But the primary October 28 letter appears to reference contact information for Knaup's doctor which Knaup was supposed to provide. To clarify the meaning of the October 28 letters, Knaup called Hartford's customer service line. (ECF No. 19-1 at PageID #117.) She stated that "I told them that I couldn't get into the doctor until November 8th because my doctor -- my doctor's schedule was full, and they stated that was fine, to submit the paperwork when you visit him." (*Id.* at PageID #118.)

### C.  November 8, 2018 Medical Visit and Medical Certification Form

During Knaup's appointment with Dr. Short, her primary care provider, on November 8, 2018, he noted her diagnosis was depression and anxiety on the medical certification form. (ECF No. 20-2 at PageID #586.)  Dr. Short transcribed Knaup's symptoms as she reported them, "depression, anxiety, irritability," and reported his own observations of her symptoms, stating that "patient has increased stress, depression, and anxiety with her job" and that this made it "difficult to perform at her job." (*Id.*)  In his doctor's notes, he wrote that she was in to follow up about her anxiety and depression, which were related to her workplace. (ECF No. 21-2 at PageID #646.) He noted Knaup stated that she was unable to work due to difficulties concentrating and that she was not "ready to go back to work yet."  Dr. Short wrote that her depression had improved to mild depression since her previous visit in October, according to a PHQ-9 test. (*Id.*)

Under the functionality section of the medical certification form, Dr. Short made several findings.  First, he marked that he did not recommend that Knaup stop working, but he did check a box indicating that her symptoms were "severe enough to preclude the patient from social/occupational functioning" as of October 9, 2018.  (ECF No. 20-2 at PageID #587.)  He explained that Knaup had "difficulty communicating with coworkers, difficulty concentrating."  He also stated that "[t]he patient can perform any work in her field that they are capable of if . . . the environment is appropriate." (*Id.*)

Dr. Short's diagnosis and notations on the medical certification form are consistent with Dr. Short's notes from Knaup's October appointment.  On October 9, 2018, the day before Knaup requested leave from Molina, he wrote that she had an appointment for an "acute visit" for depression and anxiety.  (ECF No. 21-2 at PageID #644.)  During the October visit, he administered a PHQ-9 test, which indicated the Knaup was suffering from moderate depression.  He noted her finances and job were the primary causes. (*Id.*)  He prescribed medication to treat anxiety and depression. (*Id.* at PageID #645.)

**D.  November 8, 2018 Letter from Hartford**

After Knaup's appointment, Dr. Short faxed the medical certification form to Hartford, and Hartford faxed a letter on the same day to Dr. Short asking for clarification.  First, the letter asked, "[i]f you opine symptoms of anxiety and depression are of such severity to preclude occupational functioning, please clarify if you have considered a referral to a mental health provider for more intensive treatment?"  (ECF No. 20-2 at PageID #592.)  Indicating that he had made such an opinion, Dr. Short stated that Knaup had declined a referral.  Next, the letter asked if Knaup could perform her job with a different manager, department, or employer, to which Dr. Short answered, "[y]es, patient has reported issues with her coworkers resulting in her anxiety."  Finally, the letter

5

asked if Knaup found alternative employment, did Dr. Short "see a psychiatric contraindication precluding work function in the general workplace," and Dr. Short answered, "no." (*Id.*)

### E. November 21, 2018 Letter from Hartford

On November 21, 2018, Knaup received a letter from Hartford indicating that "the evidence submitted in support of your claim does not establish that you meet [Molina's Short-Term Disability] Policy's definition of Total Disability beyond 10/09/2018. Therefore, your claim has been denied for benefits beyond 10/09/2018." (*Id.* at PageID #594.) The letter went on to explain the requirements of Molina's short-term disability benefits. (*Id.* at PageID #594–95.) The letter also included information about symptoms from pregnancy and leave extending to March 2016, which clearly did not pertain to Knaup or her requests for leave. (*Id.* at PageID #595.) The letter did not reference the FMLA or Knaup's request for FMLA leave.

### F. November 21, 2018 and December 12, 2018 Letters from Molina

On the same day, Knaup received a letter titled "Leave of Absence Final Letter" from Molina. (*Id.* at PageID #596.) In it, Molina explained that it had not received documents substantiating her absence. Molina stated that pursuant to its attendance policy, three consecutive days of absence without notifying her supervisor would be considered "job abandonment and voluntary resignation." (*Id.*) In response, Knaup checked her online account with Hartford, confirming that the medical certification had been submitted, and called customer service to ensure that Molina and Hartford were aware of the letter's misstatement and that they had received her certification. (ECF No. 19-1 at PageID #168–69.)

Molina sent a termination letter to Knaup on December 12, 2018. (ECF No. 20-3 at PageID #616.) The letter explained that on October 11, 2018, a letter was sent requesting a medical certification from Knaup's doctor by October 28, 2018 (not October 26, 2018, as noted in

Hartford's October 11 letter, and not her doctor's contact information, as noted in Hartford's primary October 28 letter correspondence).  The letter went on to explain that the October 28 letter stated that the medical certification was then due on November 8, 2018.  Next, the letter stated that Molina had yet to receive any certification.  For this reason, Molina determined that Knaup had voluntarily resigned from her position as of November 10, 2018, reflecting three days of absence without notice to her supervisor beginning on November 8, 2018.  (*Id.*)

### G. Procedural History

On January 16, 2019, Knaup filed suit.  (ECF No. 1.)  In her operative, amended complaint, Knaup raises interference and retaliation claims under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 to 2654.  (ECF No. 3 at PageID #15–16.)  Molina filed a motion for summary judgment.  (ECF No. 20.)  The briefing is complete. (*See* ECF Nos. 21, 22.)

## II.    Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the burden of showing that no genuine issues of material fact exist."  *RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 452 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The burden then shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "In order for the non-movant to defeat a summary-judgment motion, there must be evidence on which the jury could reasonably find for the [non-movant]."  *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020) (alteration in original) (quoting *Bard v. Brown County*, 970 F.3d 738, 748 (6th Cir. 2020)).  The court must "consider the evidence in the light most favorable to the nonmoving party and draw all

reasonable inferences in the party's favor." *Johnson v. City of Saginaw*, 980 F.3d 497, 506 (6th Cir. 2020) (quoting *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013)).  The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.   Analysis

Under the FMLA, an employee is entitled to take up to twelve weeks of leave within a twelve-month period when, as relevant here, the employee has "a serious health condition that makes the employee unable to perform the functions of the [employee's] position." 29 U.S.C. § 2612(a)(1)(D).  An employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by the FMLA]," nor may an employer "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." *Id.* § 2615(a)(1), (2).  Accordingly, the Sixth Circuit "has recognized two discrete theories of recovery under the FMLA:  (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from § 2615(a)(2)." *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).  Molina moves for summary judgment on Knaup's interference and retaliation claims, and it argues that Knaup is not entitled to damages.

### A.  Interference or Entitlement Claim

"To prevail on an entitlement claim, an employee must prove that:  (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Prods.,*

8

*Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  The motives of an employer are irrelevant for an interference claim.  *Id.* at 512.  Therefore, a plaintiff need only prove the above five factors.  *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).[1]  Molina argues that Knaup fails to show that she was entitled to leave under the FMLA because Knaup failed to submit timely medical certification and because she fails to show that her anxiety and depression were serious health conditions.  (ECF No. 20 at PageID #534–38.)

  i.  *Timely Medical Certification*

  First, Molina argues that Knaup failed to submit by October 26, 2018 her medical certification to support her FMLA application, which led to the denial of her request for FMLA leave.  (ECF No. 20 at PageID #534.)  Knaup responds that the deadline for submitting her medical certification was November 8, 2018 because she received an extension and that she met this deadline.  (ECF No. 21 at PageID #620, 623.)  A material fact dispute exists here.

  An employee is not eligible for leave under the FMLA if the employer properly requests medical certification of the employee' serious health condition and the employee fails to provide it in a timely manner.  *Kinds v. Ohio Bell Tele. Co.*, 724 F.3d 648, 652 (6th Cir. 2013).  Federal regulations permit employers to request medical certification of an employee's serious health condition in evaluating the employee's request for FMLA leave.  29 C.F.R. § 825.305(a).  "The employee must provide the requested certification to the employer within 15 calendar days after

---

[1] *Arban* appears to be the earliest binding Sixth Circuit precedent considering an interference claim under the FMLA, and the court did not apply the burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Arban*, 345 F.3d at 401.  Precedent has become less consistent over time, however, and the Sixth Circuit sometimes applies the *McDonnell Douglas* burden-shifting framework to entitlement claims.  *E.g.*, *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017).  *But see LaBell v. Cleveland Cliffs, Inc.*, 784 F. App'x 437, 442 (6th Cir. 2019).  "[A] published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision."  *United States v. Ausberry*, 784 F. App'x 928, 934 (6th Cir. 2019) (quoting *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014)).  Therefore, the Court follows *Arban* and does not apply the *McDonnell Douglas* burden-shifting framework to Knaup's entitlement claim.

the employer's request [for certification], unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." *Id.* § 825.305(b). Where the need for FMLA leave is unforeseeable, an employer may deny the leave request if the employee fails to provide certification "unless not practicable due to extenuating circumstances." *Id.* § 825.311(b). But "[a]bsent such extenuating circumstances, if the employee fails to timely return the certification, the employer can deny FMLA protections for the leave following the expiration of the 15–day time period until a sufficient certification is provided. If the employee never produces the certification, the leave is not FMLA leave." *Id.*[2]

Knaup demonstrates a fact dispute regarding whether her FMLA certification was due on October 26, 2018, and hence whether Molina via Hartford was entitled to deny her FMLA leave request on October 28, 2018 when Hartford did not receive a medical certification on October 26, 2018. Knaup testified that a customer service representative told her that it was permissible to turn in her FMLA certification on November 8, 2018—after she was able to schedule an appointment with Dr. Short. The federal regulations permit an employer to give more fifteen days to return a certification, § 825.305(b), and Defendants do not argue that the customer service representative could not give Knaup an extension. Additionally, the termination letter from Molina appears to acknowledge an extension of time for submitting the medical certification, explaining that the initial deadline was October 28, 2018, and that after a follow up letter was sent on October 28, 2018, the medical certification was due on November 8, 2018.

---

[2] Previously, the regulation classified the period between a lapsed fifteen-day deadline and subsequent certification as a "delay," rather than a denial, of leave. 29 C.F.R. § 825.311(b) (2009); *see also Wallace v. FedEx Corp.*, 764 F.3d 571, 588 (6th Cir. 2014) (interpreting the prior regulation).

Nothing in the record forecloses a reasonable trier of fact from concluding that Knaup received an extension.  The October 11, 2018 letter from Hartford to Knaup noted that she was eligible for FMLA beginning on October 10, 2018.  However, nothing else in the letter suggests that part of her FMLA request was deficient or outstanding, or that her FMLA request was denied. The only additional information in the letter pertained to her short-term disability leave request. Next to the short-term disability leave request, the letter noted it was "pending determination" and later in the letter, it stated that additional documentation from a healthcare provider due by October 26, 2018 was necessary to reach a determination for the short-term disability leave request.  This paragraph does not reference the FMLA leave request in any manner.  Therefore, a jury could conclude that the October 26, 2018 deadline never applied to the medical certification for the FMLA request.

Interpreting the October 11 letter to require certification by October 26, 2018 for only the short-term disability leave request is also consistent with the definition of the various eligibility statuses defined in the letter.  The letter defines "[e]ligible" as having "met the requisite criteria to be considered for leave" and "[p]ending determination" as meaning "a decision has not yet been made regarding your request."  A reasonable jury could conclude that the letter did not ask for certification to support Knaup's FMLA leave request because Hartford concluded that she was eligible, while Hartford required additional information to address the pending eligibility status of Knaup for short-term disability leave.[3]

---

[3] Although Knaup does not raise this argument, the Court cannot avoid the serious question this ambiguous letter raises:  whether Molina ever properly requested medical certification for her FMLA leave request as required by the Depart of Labor regulations.  *See* 29 C.F.R. § 825.300(c)(1)(ii) (requiring employers to specify "[a]ny requirements for the employee to furnish certification of a serious health condition"); *see generally id.* § 825.300(c) (setting forth the rights and responsibilities of employers providing notice to employees under the FMLA).

Molina raises no persuasive arguments to the contrary. First, Molina contends that because there is no documentation from Hartford regarding an extension for Knaup's FMLA certification, there is no factual dispute. (ECF No. 22 at PageID #666.) In support of this contention, Molina points to a Hartford manager's affidavit averring that Knaup never received an extension of time. (ECF No. 22-3 at PageID #706.) But any argument that there is no factual dispute is specious. Knaup's deposition testimony by itself is sufficient to create a genuine factual dispute. Fed. R. Civ. P. 56(c)(1)(A) (listing deposition testimony as materials in the record a court can consider on summary judgment). Molina essentially asks this Court to weigh more heavily the lack of documentation from Hartford than Knaup's testimony, but this is a question for the jury. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." (quoting *Anderson*, 477 U.S. at 255)).

Additionally, it would be reasonable for a jury to disbelieve Molina's records indicating that there was no extension of time. There is ample evidence that Molina and Hartford sent confusing and conflicting letters to Knaup, indicating that they were unable to accurately track their requests of Knaup and her responses. First and foremost, Hartford and Molina appear to have been unable to track the first deadline given to Knaup between themselves, leading to communications that had inconsistent due dates. Hartford communications indicated that Knaup's deadline was October 26, 2018, but Molina stated that the deadline was October 28, 2018. The same is true of whether Hartford, and hence, Molina, ever received Knaup's medical certification. In the December 2018 termination letter, Molina stated that it had never received a medical certification from Knaup. But Hartford had received a medical certification for Knaup from Dr. Short because it requested clarification from him the same day he sent the medical certification

12

form. Even within Hartford's communications to Knaup, there were internal inconsistencies. The October 11 and October 28 letters describe different types of information that needed to be submitted to support Knaup's applications for leave. The October 11 letter stated that Hartford required information from Knaup's doctor, which would be the medical certification. But the October 28 letter stated that Knaup had failed to submit simply Dr. Short's contact information. And this says nothing of the October 28 letter's inadvertent inclusion of information from 2016 regarding a pregnant applicant for leave. This disorganization only adds to the ability of a reasonable jury to find that Knaup was granted an extension of time.

Next, Molina appears to suggest that any communications from Molina and Hartford to Knaup after October 28, 2018 did not pertain to her FMLA leave request, which would undercut Molina's apparent acknowledgment of such an extension in the termination letter. (ECF No. 20 at PageID #530.) However, this does not address whether Knaup received an extension of time through customer service over the phone or whether Knaup was ever required in the first place to supplement her FMLA leave request. And Knaup's termination letter, which acknowledges the extension of time given in the October 28, 2018 letter, does nothing to distinguish between Knaup's FMLA and short-term disability requests. Instead, the letter simply addresses the alleged history behind a medical certification. (ECF No. 20-3 at PageID #616.) At the least, this does not foreclose the conclusion that Knaup also received an extension of time to submit a medical certification for her FMLA request. A reasonable trier of fact could conclude that letters to Knaup from Molina and/or Hartford were inaccurate, inconsistent, and at times incorrect, and therefore that a communication to Knaup after October 28 that failed to mention the FMLA leave request provides little evidence that those communications did not pertain to the FMLA leave request.

Next, Molina argues that Knaup's representations to the customer representative were false, specifically that she could not see Dr. Short until November 9, 2018 because she did not try to obtain any information from Dr. Short prior to the denial of her FMLA request. (ECF No. 22 at PageID #666 n.2.) This argument misses the point. Knaup does not argue that despite her good faith efforts she could not practicably procure the medical certification and so the deadline for certification should not apply. *See* 29 C.F.R. § 825.305(b). Rather, she argues that Hartford gave her an extension of time, the fact of which has nothing to do with Knaup's representations to Hartford. Again, Molina asks this Court to decide an issue reserved for the jury—Knaup's credibility. *See Payne*, 767 F.3d at 530.

ii.     *Serious Health Condition*

Next, Molina argues that Dr. Short's medical certification for Knaup, assuming it were timely submitted, fails to show Knaup's anxiety and depression were serious medical conditions because Dr. Short indicated that she was not incapacitated by noting she could "perform any work in her field." (ECF No. 20 at PageID #536–37.) Knaup counters that Molina neglects the entirety of the certification, which indicates that Knaup could not perform her job under the conditions at Molina. (ECF No. 21 at PageID #634–35.) Knaup demonstrates a material fact dispute exists as to whether she had a serious health condition.

An employee must have a serious health condition that prevents her from performing the functions of her job to be entitled to FMLA leave. 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a healthcare provider." *Id.* § 2611(11). One of the ways the Department of Labor regulations define a continuing treatment is by "[i]ncapacity and treatment," which

14

requires "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves" at least two instances of treatment "within 30 days of the first day of incapacity" or one instance of treatment "which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(1)–(2). "The term incapacity means inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b). Knaup points to evidence in the record that demonstrates a genuine issue of fact regarding whether she was unable to work and thus incapacitated.

First, Knaup points to Dr. Short's medical certification. Although he checked a box denoting that he did not recommend Knaup stop working and stating that she could perform her tasks, he also checked a box that Knaup's symptoms were severe enough to preclude her from functioning socially and occupationally at work *and* that she could perform any task "if the environment is appropriate." Dr. Short also noted the difficulties Knaup had concentrating and communicating with coworkers and stated that Knaup would have a two-month duration of impairments. Dr. Short concluded that Knaup "has had increased stress, depression, and anxiety with her job since October making it difficult to perform her job." This is sufficient evidence to create a genuine factual dispute. Although Dr. Short's certification satisfies the minimum statutory requirements, *see* 29 U.S.C. § 2613, the certification is terse and contains conflicting statements. But a jury must decide the ultimate weight of the certification.

Second, Knaup proffers Dr. Short's medical notes. For example, the notes from her October 9, 2018 visit with Dr. Short describe a medical history of depression, changes in her job and financial troubles aggravating her anxiety and depression, as well as a test result indicating

moderate depression. This is not to say that there are no facts in the notes that tend to suggest that Knaup was able to work. For instance, on November 8, 2018, Dr. Short found Knaup had improved, suffering at that time from mild depression. However, this demonstrates that there is a triable issue of fact for the jury, not that summary judgment is appropriate.

Molina counters that Dr. Short also opined in the certification that Knaup "can perform any work in her field that [she is] capable of if . . . the environment in appropriate," (ECF No. 21-3 at PageID #659), which shows that she was able to work generally. (ECF No. 20 at PageID #537.) Yet Molina provides no authority that the FMLA is interpreted so broadly. Because Knaup was seeking leave from her job with Molina, the operative question is whether she could perform *that* job, not any other job. Otherwise, the FMLA would provide no opportunity for leave. Moreover, Molina's narrow focus on this statement in the certification disregards the entirety of the medical certification form Dr. Short filed out, as described above.

Molina also asserts that Knaup's anxiety and depression are less than serious health conditions because they were tied to the social environment at work, which Molina characterizes as simply an inability to "get along with her co-workers." (*Id.* at PageID #538.) But Dr. Short's assessment was that Knaup's anxiety and depression were exacerbated by her current work environment. Molina provides no caselaw suggesting that situational anxiety and depression related to work conditions are not serious health conditions or that this undermines Dr. Short's medical certification that she could not perform at work. The nature of the harassment that Knaup testified that she experienced at Molina also supports Dr. Short's conclusion.

Next, Molina argues that Knaup cannot rely on her own judgment that she is unable to work, and that a medical provider must professionally determine that the employee cannot work. (ECF No. 22 at PageID #668.) In support of this argument, it cites one case, *Linebarger v. Honda*

16

*of America Manufacturing, Inc.*, 870 F. Supp. 2d 513 (S.D. Ohio 2012). In *Linebarger*, the court explained that an employee could not rely on her own judgment that she could not work and that a health care provider must rely on their professional judgment to conclude that an employee is unable to work. 870 F. Supp. 2d at 524. Thus, a physician cannot solely rely on a plaintiff's "self-diagnosis." *Hyldalh v. Mich. Bell. Tele. Co.*, 503 F. App'x 432, 454 (6th Cir. 2012). Here, there is no evidence that Knaup is relying on her own judgment that she was incapacitated because she suffered from anxiety and depression. Dr. Short's certification relies on more than Knaup's own reports of her symptoms or conditions; it includes symptoms that Dr. Short observed and his own diagnosis that she was suffering from increased stress, depression, and anxiety.

Finally, Molina argues that the Court cannot consider any record evidence that Knaup did not submit to Hartford, (ECF No. 22 at PageID #669), but this assertion finds no precedential support. Because whether a plaintiff has a serious health condition is an objective inquiry, courts may consider evidence that was not before the employer in making its leave determination. *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997) (holding that it was permissible to consider evidence acquired after the employee was terminated). Courts routinely consider evidence that was not presented to the employer in making a leave determination. In *Branham v. Gannett Satellite Information Network, Inc.*, the court considered the certification, testimony, and medical records. 619 F.3d 563, 570 (6th Cir. 2010).

## B. Retaliation or Discrimination Claim

FMLA retaliation claims that rely on circumstantial or indirect evidence, as opposed to direct evidence, are evaluated under the burden-shifting framework set forth by *McDonnell Douglas*. *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451 (6th Cir. 2017). At the first stage, a plaintiff must demonstrate a prima facie case of discrimination, which is not an "onerous"

burden. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (Title VII). "To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016). Once the plaintiff has satisfied her burden of production, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action, and then back to the plaintiff to demonstrate this legitimate reason is pretext for discrimination. *Jackson*, 814 F.3d. at 778–79. Molina argues that it is undisputed that Knaup did not engage in a protected activity, that there is no causal connection between her FMLA application and her termination, and that there is no pretext for her termination. (ECF No. 20 at PageID #538–39; ECF No. 22 at PageID #672–73.)

Two of Molina's arguments are swiftly disposed of. First, the undisputed facts demonstrate the Knaup engaged in a protected activity by filing for FMLA leave. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Second, assuming that Knaup makes her prima facie case, Knaup points to facts demonstrating that it is disputed whether Molina's proffered legitimate reason for her termination—failure to timely return medical certification and failure to return to work after the denial of her FMLA request—is pretextual because it has no basis in fact. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). As discussed above, there is a fact dispute whether Knaup failed to return her medical certification in a timely manner or whether she was granted an extension of time to submit the certification. *Supra* Part III.A.i. The more difficult issue is whether Knaup demonstrates a causal connection between her application for FMLA leave and her termination.

"In order to establish such a causal connection, a plaintiff must show some type of retaliatory intent." *Tennial*, 840 F.3d at 309.  Put differently, there must be evidence demonstrating that the employer "possessed a discriminatory animus towards [the plaintiff] on the basis of" their protected activity under the FMLA.  *Grubb v. YSK Corp.*, 401 F. App'x 104, 110 (6th Cir. 2010).  The federal regulations provide further context, explaining that employers cannot use FMLA-protected activities "as a negative factor in employment actions."  29 C.F.R. § 825.220; *see also Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 408 (6th Cir. 2003).  Unlike an interference claim under the FMLA, an employer's intent is critical to the analysis of a relation claim.  *Edgar*, 443 F.3d at 508.  "The employer's motive is relevant because retaliation claims impose lability on employers that act against employees specifically *because* those employees invoked their FMLA rights."  *Id.*

Knaup points to no evidence in the record demonstrating that Molina possessed retaliatory intent, and thus she fails to establish a causal connection.  The extent of her causation argument is that "[i]f [she] had not applied for FMLA leave in the first place, Defendant could not have terminated her for alleged failure to return the Medical Certification that was needed to approve or deny the FMLA application."  (ECF No. 21 at PageID #630.)  Knaup simply points out that her act of applying for FMLA leave created the specific factual circumstances in this case; this is not the same as a causal connection.  Noticeably absent is any evidence of a retaliatory intent or discriminatory animus against Knaup for filing for FMLA leave.  For example, there is no indication that Knaup's application for leave was considered in her termination.  In fact, the letter is clear that other factors were considered in her termination.  Thus, her protected activity was not a negative factor in the decision to terminate her.  Although a plaintiff's burden at the prima facie stage is light, the prima facie test still serves "[a]n important function," "to eliminate the most

common nondiscriminatory reasons for the employer's action." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). Such is the case here, where a plaintiff fails to demonstrate that her termination bore any connection to her act of filing for leave under the FMLA.[4]

Knaup is correct that the same event can give rise to an interference and a relation claim, but this is only so when there is no retaliatory animus. *See Wallner v. Hilliard*, 590 F. App'x 546, 551 (6th Cir. 2014). Knaup fails to point to any evidence in the record demonstrating that Molina had such an animus, and so summary judgment is appropriate.

### C. Damages

Molina raises two arguments that purportedly foreclose or limit Knaup's damages. First, Molina argues that Knaup has not suffered any damages because Molina would have fired her for performance-related issues (ECF No. 20 at PageID #540; ECF No. 22 at PageID #674), but Molina errs by characterizing this argument as one regarding the availability of damages. The Sixth Circuit has considered whether an employee raising an FMLA relation claim would have been terminated anyway, but always with regard to liability. *See Bush*, 683 F. App'x at 451–52 (causal connection of the prima facie case); *Wallner*, 590 F. App'x at 554–55 (same); *Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1 (6th Cir. 2012) (pretext); *Ebright v. City of Pickerington*, No. 2:16-cv-378, 2018 WL 1512280, at *6–7 (S.D. Ohio Mar. 27, 2018) (causal connection of the prima facie case). The same is true of interference or entitlement claims: "an employer may defeat *liability* by showing that the FMLA benefit did not accrue because the plaintiff was discharged for

---

[4] Retaliatory intent can be inferred from other circumstantial evidence, such as temporal proximity. But "[t]he more time that elapses between the protected activity and the adverse employment action, the more a plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'" *Bush*, 683 F. App'x at 452 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). In *Bush*, the Court required more than temporal proximity when two and a half months had elapsed between the FMLA protected activity and the adverse action. Here, two months elapsed between Knaup's FMLA application in October 2018 and her termination in December 2018. Under these circumstances, where there is not a hint of retaliatory motive in the record or even a mention of her act of filing for leave under the FMLA after she did so, a reasonable jury could not infer retaliatory motive based on this span of time between Knaup's application for FMLA leave and her termination.

some other, legitimate reason." *Wallner*, 590 F. App'x at 550 (emphasis added).  The possibility that an employee would have been fired anyway does not act in any way to limit damages apart from informing whether liability attaches in the first place.

 Considering this argument in the proper liability context does little for Molina.  Summary judgment is appropriate for Knaup's FMLA retaliation claim because she failed to demonstrate a causal connection, so it does not matter whether Knaup would have been terminated for performance issues. And Molina does not argue that Knaup's previous performance-related performance issues prevented the accrual of her entitlement to FMLA leave.  Therefore, this argument also has no impact on Knaup's entitlement claim.

Second, Molina contends that Knaup's claims for back pay should be limited to the time period between December 12, 2018 and when she obtained a new job in March 2019.  (ECF No. 20 at PageID #541.)  Failure to mitigate is an affirmative defense, and so Molina bears the burden of persuasion at trial.  *Taylor v. Invacare Corp.*, 64 F. App'x 516, 523 (6th Cir. 2003).  Thus, Molina's "initial" burden as the movant on summary judgment "is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).  Specifically, the moving party "must lay out the elements of its claims."  10A Mary Kay Kane, Federal Practice & Procedure § 2727.1 (4th ed.) (Westlaw Update Oct. 2020).

The record reveals a genuine issue of fact on this issue.  Molina "must show that substantially equivalent positions were available and the plaintiff failed to use reasonable diligence in seeking them out."  *Taylor*, 64 F. App'x at 523.  Although Molina argues that Knaup secured another job at LucidHealth in March 2019, which she quit a week later, it makes no effort to show

that this position was substantially equivalent to Knaup's Care Review Processor position with Molina.  And even though Knaup raises only ancillary arguments about why she quit her new job at LucidHealth (ECF No. 22 at PageID #674), the Court must deny the motion because Molina failed to satisfy its initial burden of production.  Kane, *supra* at § 2727.1 ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

For these reasons, Molina fails to show that summary judgment is appropriate in relation to any damages issues separate from liability.

**IV.    Conclusion**

For these reasons, Molina's motion for summary judgment (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART**. It is **DENIED** with regard to Knaup's FMLA interference claim and the availability and amount of damages, and it is **GRANTED** with regard to Knaup's FMLA retaliation claim.

**IT IS SO ORDERED.**


**3/3/2021**                                       **s/Edmund A. Sargus, Jr.**
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                             **UNITED STATES DISTRICT JUDGE**